**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ennis Maurice FANT, Defendant-Appellant.**

**No. 91–5853.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1992.

Decided Sept. 10, 1992.

As Amended Nov. 2, 1992.

---

William Alexander Coates, Love, Thornton, Arnold & Thomason, Greenville, S.C., argued (Belton Oswald Thomason, Jr., on brief), for defendant-appellant.

John Michael Barton, Asst. U.S. Atty., Columbia, S.C. argued (E. Bart Daniel, U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER, MURNAGHAN, and NIEMEYER, Circuit Judges.

OPINION

MURNAGHAN, Circuit Judge:

Ennis Fant ("appellant"), a former South Carolina State Representative, was indicted in October 1990, on one count of conspiracy to commit extortion, and on two substantive counts of extortion under color of official right (taking a bribe as a public official) in violation of 18 U.S.C. §§ 1951 and 1952 ("the Hobbs Act").[1] Pursuant to a plea agreement, appellant pled guilty to the conspiracy count. Subsequently, the government filed a motion for downward departure because of appellant's substantial assistance to authorities pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1. On July 31, 1991, appellant was sentenced to 20 months incarceration calculated based on the § 5K1.1

---

**1.** Section 1951 reads, in part:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.... The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right.

Section 1952 adds an additional count for the use of interstate or foreign commerce, including the mail, in the commission of a crime under the provision.

downward departure, and a two-level enhancement for "obstruction of justice" pursuant to U.S.S.G. § 3C1.1.[2] Appellant filed a motion to correct and reconsider the addition of the two-level enhancement to his sentence, which was immediately denied. Appellant has filed a timely notice of appeal.

## I.

The indictment of appellant, and several other South Carolina State Representatives, arose out of a "sting" operation set up by the Federal Bureau of Investigation ("FBI") in response to allegations of corruption in the South Carolina state government. The FBI used an undercover informant, Ron Cobb, who allegedly paid appellant, and other government officials, for their support of a bill that would allow parimutuel betting in the state. Various payments were made to appellant, the last coming on May 9, 1990. On July 3, 1990, appellant filed a Campaign Disclosure Form in which he reported the $1,300 he received from Cobb, and officially characterized it as a campaign contribution.

As a result of the investigation, Fant was indicted in October of 1990. After a trial date was set, appellant pled guilty to one count of conspiracy. As part of a negotiated plea agreement, appellant promised that he would cooperate with government officials, in return for the government's promise that any evidence obtained as a result of that cooperation would not be used to determine the applicable guideline range at appellant's sentencing hearing. The relevant section of the plea agreement, executed on February 22, 1991, reads as follows:

> The Government agrees that any self-incriminating information provided by

the Defendant ... as a result of his compliance with the terms of this Agreement, although available to the Court, will not be used against the Defendant ... in determining the Defendant's applicable guideline range for sentencing pursuant to the U.S. Sentencing Commission Guidelines. The provisions of this paragraph shall not be applied to restrict the use of information: (A) known to the Government prior to the date of this Agreement; (B) in a prosecution for perjury or giving a false statement; (C) In the event there is a breach of the cooperation Agreement.

Section 1B1.8, United States Sentencing Commission Guidelines.[3]

Subsequently, appellant gave testimony to FBI Agents, acting in the capacity of probation officers, in two separate interviews. The interviews were held on June 12, 1991, and July 29, 1991, both after the date that the plea agreement was executed. The interviews formed the basis of presentencing reports, which were provided to the court. As a result of the second interview, an enhancement pursuant to § 3C1.1 for obstruction of justice was recommended because the appellant informed the officer that he had reported the money paid him by Cobb on a Campaign Disclosure Form because he had received a tip from a colleague and alleged co-conspirator that Cobb might be an informant and that the appellant might be under some type of investigation. The stated justification for the recommended enhancement for obstruction of justice was "the fact that Fant claimed the money he received as a campaign contribution" which was "viewed as an attempt to cover up his involvement in the pari-mutuel betting scheme." Furthermore, in an addendum to the report, the

---

**2.** U.S.S.G. § 3C1.1 states that:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

**3.** The version of U.S.S.G. § 1B1.8 applicable at the time of appellant's sentencing provided that:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

officer stated that "Fant admitted in his statement regarding acceptance of responsibility that ... as a *result* of his conversation, he instructed his mother who was his campaign treasurer, to report the receipt [of the money]."

The court relied upon the statement cited in the presentencing report when it applied the two-level enhancement for obstruction of justice. The central question on appeal is whether the inclusion of the statement made to the probation officers subsequent to the execution of the plea agreement, and the use of that statement as support for a two-level enhancement for obstruction of justice, constituted a breach of the plea agreement.

■ Appellant failed to raise the claim of violation of the plea agreement in his motion for reconsideration of the sentence, or at the sentencing hearing. Such a failure is tantamount to a failure to bring an objection or claim initially during trial. *United States v. Navejar*, 963 F.2d 732, 734 (5th Cir.1992). Accordingly, we must affirm the sentence of the district court unless we find "plain error" in the sentencing determination.[4]

### II.

■ It is undisputed that the self-incriminating statements by appellant which formed the basis for the § 3C1.1 enhancement were made following the execution of the plea agreement. Furthermore, it is undisputed that the government expressly relied on those statements when seeking the enhancement. On appeal, the government justifies the use of such statements to enhance the appellant's sentence, asserting that statements made to a probation officer are not statements made to the "Government" within the meaning of the plea agreement because the probation office performs duties, including preparation of the presentencing report, which are independent from direct prosecution activities. The government contends that only statements made to agents of the prosecution properly may be considered statements made pursuant to the plea agreement.

The plea agreement expressly proscribes the use of "*any* self-incriminating information provided by the Defendant ... as a result of his compliance with the terms of the Agreement." (Emphasis added). Specific limits on this prohibition are indicated in the plea agreement, but these limits involve the use of evidence already known to the government, the breach of the defendant's obligations under the agreement, and the event of a subsequent perjury prosecution, none of which apply in the instant case. There is no limit expressed concerning the nature of the proceeding in which the government's knowledge of incriminating evidence post-February 22, 1991, could be obtained, or the identity of the information gatherer who could obtain it.

Although the probation officer to whom appellant made his statement was not a directly adverse party, the officer was an involved government employee, and the statement was made as a result of appellant's compliance with the agreement. The central defining characteristic of the plea agreement was that appellant would plead guilty and offer statements concerning his involvement and the involvement of others in the illegal activities giving rise to the investigation in return for sentencing immunity based on any statements made. Pursuant to the agreement, appellant spoke to the probation officers, and discussed aspects of the investigation with the officers. Subsequently, self-incriminating aspects of his statements were used as a basis for the calculation of the applicable sentencing range.

Review of the language of the plea agreement, and of U.S.S.G. § 1B1.8, upon which it and similar agreements are based, indicates that the government's proposed distinction between statements made to probation officers, and those made to the "Government," pursuant to a bargained for

---

**4.** We have concluded that while "only in exceptional cases will questions, of whatever nature, not raised and properly preserved for review in the trial court, be noticed on appeal ... [p]lain errors or defects affecting substantive rights may be noticed ..." *United States v. Maxton*, 940 F.2d 103, 105 (4th Cir.1991) (citations omitted).

plea agreement, is a substantially false distinction. The information obtained by the government following the plea agreement could not properly be offered to support the § 3C1.1 two-level enhancement even though the information was obtained by a probation officer and not an agent of the prosecution. "Following" and "known prior to" are antithetical. Appellant's plea agreement does not simply preclude the use of self-incriminating evidence provided by the defendant in direct conversations only with representatives of the attorney general's office.

Furthermore, the Sentencing Guideline upon which the plea agreement language is based, U.S.S.G. § 1B1.8, offers no suggestion of a limitation or preclusion of the use of incriminating statements based on whether the government official eliciting the statements was a prosecution official or some other government representative. The version of § 1B1.8, applicable on July 31, 1991, at the time of appellant's sentencing, reads as follows:

> Where a defendant agrees to cooperate with the *government* by providing information concerning unlawful activities of others,[5] and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Application Note 1 to the section provides an explanation of the specific requirements set out by the section:

> This provision does not authorize the government to withhold information from the court but provides that self-incriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range. Under this provision, for example, if a defendant is arrested in pos-

session of a kilogram of cocaine and, pursuant to an agreement to provide information concerning the unlawful activities of co-conspirators, admits that he assisted in the importation of an additional three kilograms of cocaine, *a fact not previously known to the government,* this admission would not be used to increase his applicable guideline range, except to the extent provided in the agreement.

(Emphasis added).

As we stated in *United States v. Malvito,* 946 F.2d 1066, 1068 (4th Cir.1991), § 1B1.8 should not be read to allow a defendant to be:

> subjected to an increased sentence by virtue of his cooperation where the government agreed that the information revealed would not be used for such a purpose.... Unless a defendant can feel secure in the government's promise of sentencing immunity, he faces a Hobson's choice between losing a substantial assistance departure by (i) telling so much that the district court denies the departure because of the information he reveals and (ii) telling too little, being caught in it, and losing the government's recommendation.... The government is entitled to promise that it will not use information gained under a cooperation agreement against the defendant, and the defendant is entitled to trust that promise. The district court is not bound by the government's recommendation that it make a substantial assistance departure. On the other hand, U.S.S.G. § 1B1.8 requires it to honor the government's promise that self-incriminating information volunteered by the defendant under the cooperation agreement will not subject the defendant to a harsher sentence.

In the present case, the government promised the appellant, in return for his cooperation, that none of the information

5. Appellant's statement to the probation officer primarily involved the warning he received from a colleague concerning Cobb and his payments. The statement was helpful in determining the guilt of that colleague and others, and formed the basis of the downward departure. The statement was of "particular assistance" to the government according to the Assistant United States Attorney.

he provided while cooperating would be used as the basis of an additional sentence. Appellant chose to speak freely to the probation officer who prepared his presentencing report. That choice was indisputably determined by the promise of sentencing immunity which he reasonably believed applied to those discussions, and was therefore, a statement made "as a result of his compliance with the terms of this agreement."

At least two federal circuits have expressed opposing views on the propriety of the sentencing court's use of information given to a probation officer in the context of a § 1B1.8 plea agreement. In *United States v. Marsh*, 963 F.2d 72 (5th Cir.1992), the Fifth Circuit addressed the question of "whether U.S.S.G. § 1B1.8 permits a district court to calculate the applicable offense level based on self-incriminating information revealed by a defendant to a probation officer" pursuant to a sentencing immunity agreement. *Id.* at 74. The court concluded that "§ 1B1.8 prohibits the sentencing court from taking such information into account in calculating the applicable guideline range. The fact that a defendant provides the protected information to the probation officer does not alter our conclusion." *Id. Cf. United States v. Kinsey*, 917 F.2d 181, 184 (5th Cir.1990). To the contrary, in *United States v. Miller*, 910 F.2d 1321, 1325–26 (6th Cir.1990), the Sixth Circuit held that a statement made to a probation officer is not a statement made to the "government" within the meaning of § 1B1.8 and that such statements are not covered by the section's limitation.

A recent amendment to the Sentencing Guidelines indicates the proper resolution of the dispute, however. The new Application Note 5 under the Commentary to § 1B1.8, effective November 27, 1991, states that:

> This guideline limits the use of certain incriminating information furnished by a defendant in the context of a defendant-government agreement for the defendant to provide information concerning the unlawful activities of other persons. The guideline operates as a limitation on the use of such incriminating information in determining the applicable guideline range, and not merely as a restriction of the government's presentation of such information (*e.g., where the defendant, subsequent to having entered into a cooperation agreement, repeats such information to the probation officer preparing the presentence report, the use of such information remains protected by this section*).

(Emphasis added). Although the Application Note was not in effect at the time of appellant's sentencing, the addition of the Note was intended merely to clarify and resolve the difference of opinion as to the proper operation of § 1B1.8. *Marsh*, 963 F.2d at 74. It is apparent, therefore, that the restriction set out in § 1B1.8, preventing the use of self-incriminating statements made by a cooperating defendant, applies to statements made to probation officers which are later incorporated into presentencing reports.

### III.

The use of the self-incriminating statements made by appellant subsequent to the execution of the plea agreement for the purpose of enhancing his sentencing level was a clear violation of his plea agreement. Allowing the use of post-plea, self-incriminating statements made to a probation officer and included in the presentencing report, despite a use immunity agreement, would severely undermine the purposes advanced by traditions and statutory provisions which protect defendants willing to provide information to investigating officers. Allowing the use of the statements for such a purpose, providing the government the opportunity to side-step its promise not to sentence based on any information obtained after a plea agreement, would drastically restrict the candor of informants, potentially impeding the flow of information from an indispensable source, and undermining the credibility of the criminal court system and the promises made by its officers. However, our analysis does not end with the conclusion that the plea agreement was violated. Because the appellant failed to raise the issue at sentenc-

ing and raises it for the first time on appeal, we must affirm the sentence the district court imposed unless we find plain error. *United States v. Maxton*, 940 F.2d 103, 105 (4th Cir.1991).

■ "Plain error" is shown when the error committed "is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Navejar*, 963 F.2d 732, 734 (5th Cir.1992). In *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) (citation omitted), we stated that violations of plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve "the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." "The failure of the Government to fulfill its promise, therefore, affects the fairness, integrity, and public reputation of judicial proceedings.... [Therefore] a prosecutor's breach of a plea agreement can amount to plain error." *United States v. Goldfaden*, 959 F.2d 1324, 1328 (5th Cir.1992).

■ Because the use of the information obtained after the plea agreement to support a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 constitutes a breach of the plea agreement, a violation of U.S.S.G. § 1B1.8, and serves to affect the integrity and public reputation of judicial proceedings, we find that breach of the plea agreement qualifies as "plain error" and requires vacation of the sentence, and a remand for resentencing.[6]

VACATED AND REMANDED.

___

6. Appellant offers various additional bases to support vacating the sentence, but since we need not reach those other issues, we decline to do so.