995 F.2d 1065
 1993 O.S.H.D. (CCH) P 30,085
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
TERRY EAGLE COAL COMPANY, Defendant-Appellant.
 No. 92-5570.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1993
Decided: June 9, 1993
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden, III, Chief District Judge. (CR-92-1-2)
 Donald Ayer, Jones, Day, Reavis & Pogue, Washington, D.C ., for Appellant.
 Philip Blair Scott, Assistant United States Attorney, Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.
 Peter A. Carfagna, Steven J. Mintz, Jones, Day, Reavis & Pogue, Cleveland, Ohio; Charles M. Love, III, Bowles, Rice, McDavid, Graff & Love, Charleston, West Virginia, for Appellant.
 S.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Terry Eagle Coal Company (the "Company") appeals the district court's imposition of a $1,000,000 fine for violating the Mine Safety and Health Act of 1977 (the "Act"), 30 U.S.C.s 801-962, and aiding and abetting in the violation of the Act. The Company pleaded guilty, pursuant to a plea agreement with the Government, to violating section 820(d) (willful violation of a mandatory mine health or safety standard) and 18 U.S.C. § 2 (the commission or aiding and abetting the commission of an offense against the United States). The Company raises four issues on appeal: (1) whether the Government violated the plea agreement in its allocution before the district court by undermining and contradicting its sentencing recommendation; (2) whether the prosecutor violated the plea agreement by not stating that the Company had been truthful and forthright; (3) whether the district court improperly relied on a disputed version of the plea agreement; and (4) whether the district court erred by failing to make factual findings at sentencing as required by statute. Finding no merit in the issues raised, we affirm the district court's decision.
 
 
 2
 * This case arises from a coal mining accident which resulted in a miner's death. The Company owned and managed a coal mine in Gilboa, West Virginia that used electrical equipment in its daily operations. On June 17, 1987, a miner was electrocuted when he touched an electric roof bolter used in the mining operation. A ground-tophase fault in the cable leading to the roof bolter caused the miner's electrocution.
 
 
 3
 The death triggered an investigation by the Mine Safety and Health Administration and by the United States Attorney's office in West Virginia. As a result of the investigation, the Government filed a two-count information against Howard Hinkle, the Company's electrical supervisor, and the Company itself, charging both with willful violations of 30 U.S.C. § 820(d) and 18 U.S.C.s 2. Both defendants entered separate plea agreements.
 
 
 4
 On April 14, 1992, the Company pleaded guilty to the two violations charged in the information. The plea agreement in pertinent part stated
 
 
 5
 7. At final disposition, the United States will advise the Court of the nature and extent of the Company's representatives' and employees', forthrightness and truthfulness, or failure to be forthright and truthful, and ask the Court to give same such weight as the Court deems appropriate.
 
 
 6
 8. There have been no promises or representations whatsoever made to the Company, its representatives or employees, by the United States or any of its agents as to what the final disposition in this matter will be. It is understood that the matter of sentencing is within the sole discretion of the Court. The United States will recommend that an appropriate sentence would be a total aggregate fine of $100,000. The United States retains the right to inform the probation office and the Court of any relevant facts, to address the Court with respect to the nature and seriousness of the offense, to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report and to respond to any statements made to the Court by or on behalf of the Company.
 
 
 7
 The plea agreement was an integrated agreement.
 
 
 8
 A presentence investigation report ("PSI") was prepared, to which the Company took exception. In a letter to the probation officer, the Company reiterated its position that if it were criminally liable, its liability was vicarious and that the PSI should better reflect vicarious liability.
 
 
 9
 Howard Hinkle's and the Company's sentencing occurred on August 3, 1992. Prior to the Company's sentencing, Howard Hinkle was sentenced by the same court. The Government noted that Hinkle had been completely forthright and truthful and his cooperation was an important reason that the Company had entered a plea of guilty. Hinkle received a $1,000 fine, a one-year suspended sentence, and a $50 special assessment.
 
 
 10
 The district court moved directly on to the Company's sentencing, inquiring whether the Company had any objections to the PSI. The Company responded that it disagreed with the Government about certain language in the presentence report. The district court ordered a recess so that the Government and the Company could resolve their differences as to the contents of the report.
 
 
 11
 During the recess the parties discussed the Company's objections and agreed to certain changes. The Government and the Company agreed to modify the PSI's language regarding the issuance of rubber gloves to the miners. They further agreed to modify language which stated that unsafe electrical procedures were "common practice" to reflect that unsafe electrical procedures occurred"on occasion." Following the recess the court inquired as to whether all of the Company's objections were resolved. The Company stated that it had no further objections, and the court accepted the corrected version of the PSI as final. The court then questioned the Company as to the state of its finances.
 
 
 12
 After accepting the report and questioning the Company's counsel, the district court gave both the Government and the Company an opportunity to address the court. The Company accepted blame for the incident to a limited degree, but emphasized its position that Hinkle was not following the Company's procedures or policy at the time of the accident. The Company stated:
 
 
 13
 We believe it's a good operation, always has been, and if we had a problem up there, it's because of Mr. Hinkle's actions and not those that were sanctioned or authorized by the company. (emphasis added).
 
 
 14
 The Company also stated that it was a responsible corporate citizen that made significant contributions to the community in which it operated.
 
 
 15
 The Government responded to the Company's arguments by first stating that the Company should receive a $100,000 fine as recommended in the plea agreement. The Government then rebutted the Company's prior assertions by contending that the miner's death was a terrible tragedy and that the Company was more responsible for the death than it had just indicated. The Government argued that liability was more than just vicarious. The Government then stated: "This State has had a terrible history, recent history, of mining fatalities, and the Court needs to send a message that these cases will be treated seriously...." The Government did not state whether the Company had been helpful or cooperative, but stated that the Company had failed to accept fully its responsibility for the accident. The Company did not object to any of the Government's remarks, and it failed to allege that the plea agreement had been breached.
 
 
 16
 Following the allocution, the district court entered the fine. It ignored the Government's recommendation and fined the Company $1,000,000, the maximum statutory amount. The Company also was given a term of probation of one year or until the fine was paid in full, and a $250.00 special assessment. The court found that based on the facts it was inappropriate to place significant blame on Hinkle alone. This appeal ensued.
 
 II
 
 17
 * The Company presents two issues regarding the Government's compliance with the plea agreement. The first issue presented is whether the Government breached its duty to adhere to promises made to the Company that were a significant basis of the plea agreement. It admits that the Government complied with the literal terms of the plea agreement in recommending the $100,000 fine, but contends that the Government breached the spirit of the plea agreement in its severe comments to the court. The Company asserts that the Government's remarks concerning West Virginia's history of mining fatalities violated the spirit and purpose of the sentencing recommendation. It further argues that these statements were inconsistent with the Government's recommendation of a $100,000 fine, which is at the lower end of the sentencing scale. The Company, however, failed to object to the Government's remarks or raise the claim of a breach of the plea agreement at sentencing. Therefore, we must review the district court's ruling on a plain error standard. See United States v. Fant, 974 F.2d 559, 562 (4th Cir. 1992).
 
 
 18
 Our analysis of the issue begins with Santobello v. New York, 404 U.S. 257, 261 (1971), and its progeny. In Santobello the Supreme Court ruled that it was error for the district court to accept a plea where the terms of the plea agreement had been violated. Id. at 26263. The Court held that
 
 
 19
 when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration such promise must be fulfilled.
 
 
 20
 Id. at 262.
 
 
 21
 We have held that plea bargains rest on contractual principles, and that each party should receive the benefit of its bargain. United States v. Harvey, 791 F.2d 294, 300-01 (4th Cir. 1986). In Harvey we further stated that when interpreting a plea agreement
 
 
 22
 both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to a commercial contract) for imprecisions or ambiguities in plea agreements.
 
 
 23
 Id. at 300. Courts must be conscientious in reviewing plea agreements because they involve due process rights; therefore the Government's responsibility to honor them is higher. United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972). Should a plea agreement be breached by the Government, the defendant is entitled to an appropriate remedy.
 
 
 24
 Proceeding from these premises, we find that the Government's statements at sentencing regarding the accident being a "tragedy" and the seriousness of the crime did not violate the terms or spirit of the plea agreement. The Government fulfilled the literal terms of the agreement by stating its recommendation for the $100,000 fine. The plea agreement, however, further provided that "[t]he United States retains the right to inform the probation office and the Court of any relevant facts, to address the Court with respect to the nature and seriousness of the offense."
 
 
 25
 The Government's references to the accident being a"tragedy" and to the crime's seriousness are explicitly permitted by the terms of the plea agreement. The Government was well within the bounds of the plea agreement in stating that it viewed the accident as very serious. Thus the Government was exercising the rights it retained.
 
 
 26
 The more vexing concern is whether the Government's remarks regarding West Virginia's history of mining accidents violated the spirit and purpose of the sentencing recommendation in the plea agreement. The most analogous case is United States v. Moore, 931 F.2d 245 (4th Cir. 1991). In Moore we examined former West Virginia Governor Arch Moore's plea agreement, which contained language identical to the instant case except that the Government promised not to make a sentencing recommendation. Ex-Governor Moore claimed that the prosecution violated the spirit of the plea agreement because the Government sought to influence the severity of his sentence even though it agreed not to make a specific sentencing recommendation. We held that the former Governor did not have a reasonable basis "to believe that the prosecutor's promise to refrain from recommending a specific sentence protected him from remarks calculated to induce the court to issue a severe prison term." Id . at 250 (emphasis in original). We also noted that the defendant was represented by able counsel who understood the plea agreement's meaning. Id.
 
 
 27
 The reasoning of Moore is equally applicable here. The Company could not reasonably have believed that the Government would not exercise its rights under the plea agreement, particularly since it was represented by able counsel. The Government made the agreed-upon recommendation of a $100,000 fine. It then stated that it stood by the recommended fine, and that its subsequent comments were not to be interpreted otherwise. It merely directed its comments to the Company's prior assertions.* While we normally disfavor the use of such broad statements by the Government regarding conditions outside the facts of the case, this did not rise to plain error on the facts of this case. The Government should avoid such remarks in the future, however.
 
 
 28
 The Company presents as its second issue the contention that the Government failed to "advise the court of the nature and extent of the Company's representatives' and employees' forthrightness and truthfulness" as required by the terms of the plea agreement. This alleged violation is governed by the same standards and principles enunciated in Santobello and Harvey: plea agreements rest on contractual principles and each party should receive the benefit of its bargain. See Harvey, 791 F.2d at 300-01.
 
 
 29
 The Government did not violate the terms of the plea agreement either. The Company would have this court read only the first half of the provision in the plea agreement stating that the Government shall tell the court if the Company cooperated. The paragraph in its entirety also states that the Government will advise the court of the Company's "failure to be forthright and truthful" making no reference to the precise context of the cooperation and acceptance of responsibility.
 
 
 30
 The record reveals that the Government felt that the Company had not been forthright in accepting responsibility. The Government's remarks at sentencing indicate that it viewed the Company as having failed to be forthright. Although the Government did not use the terms "truthful" or "forthright", the Government conveyed to the court its view of the Company's cooperation, which was negative. The Government was bothered by the Company's continuing denial of full responsibility for the accident. The Government fulfilled the terms of the plea bargain by negatively commenting on the Company's forthrightness in accepting responsibility for the accident.
 
 B
 
 31
 The Company alleges that the district court erred in two respects at sentencing: first, the court improperly relied on controverted facts in the plea agreement; and second, the court did not consider the required statutory factors and mitigating circumstances. Because the Company failed to claim a breach of the plea agreement below, we review this under a plain error standard. United States v. Fant, 974 F.2d 559, 562 (4th Cir. 1992). We will address each issue in turn.
 
 
 32
 First, the Company contends that the district court improperly relied on controverted facts in reaching its sentencing decision in contravention of Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure. The Company points to three statements by the district court which it asserts demonstrate that the court was preceding from the unamended presentence report. First, the Company contends that the district court's statement, "I reject the company's position and I adopt the United States position," is evidence of the district court's reliance on the old version of the presentence report. Second, the Company argues that the district court's statements regarding multiple violations of the mine safety laws, and the court's apparent "mocking" of the compromises in the report's language constitute impermissible reliance on the prior version of the agreement. Third, the Company asserts that the court's remarks as to which evidence on it should focus demonstrates the court's reliance on controverted facts.
 
 
 33
 Rule 32(c)(3)(D) provides in relevant part that:
 
 
 34
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.
 
 
 35
 Fed. R. Crim. P. 32. In United States v. Morgan, 942 F.2d 243 (4th Cir. 1991), we held that the district court could satisfy the Rule 32(c)(3)(D) requirement by expressly adopting the presentence report. Id. at 245. In this case the court adopted the presentence report in which there were no controverted facts. Initially, the district court asked if there were objections to the PSI. After the Company objected to certain facts, the district court ordered a recess and the parties resolved the disputed portions. Subsequent to correcting the PSI, the court called for additional objections to which the Company stated there were none. The court accepted the unobjected-to version as final.
 
 
 36
 In its claim of error, the Company misrepresents each of the district court's alleged misstatements. As to the first alleged misstatement, the court clearly was referring to the two oral presentations that both parties made. Each party offered a different view of the Company's degree of culpability. The court's alleged second misstatement was actually in reference to the Government's statements during its prior oral presentation regarding how often the Company had committed violations; it was not in reference to the presentence report. The court's third alleged misstatement actually was in regard to its attempts to get the parties to agree on all the facts; that statement immediately preceded the court's call for a recess. There were no disputed facts in the presentence report on which the district court relied. Therefore, the Company's allegations of error in the sentencing process are without merit.
 
 
 37
 The Company contends that the district court erred by not stating its specific findings as required by 18 U.S.C. § 3622. (superseded by 18 U.S.C. § 3572.) Section 3622 provided that the court shall consider nine factors when imposing a fine as a sentence in order that the sentence be individualized to that particular defendant.
 
 
 38
 In United States v. Harvey, 885 F.2d 181, 182 (4th Cir. 1989), we held that under 18 U.S.C. § 3622 district courts must make specific findings of fact concerning the factors listed. We stated that section 3622 "requires sentencing courts specifically to consider certain factors in connection with the imposition of fines." Id. Such factual determinations are necessary for effective appellate review. In the instant case the record reveals that the court inquired into all of the necessary factors in determining the Company's sentence. While not a model set of findings, the district court mentioned several factors which demonstrated the court had individualized its sentence for the Company.
 
 III
 
 39
 For the foregoing reasons, the decision of the district court is
 
 
 40
 AFFIRMED.
 
 
 
 *
 Moreover, the Company's comments opened the door for the Government's remarks. The Company in effect denied that it was responsible for the accident by stating that it had a good operation "and if we had a problem up there, it's because of Mr. Hinkle's actions and not those that were sanctioned or authorized by the company." (emphasis added). Given the context of the statement, the Company was urging the court to go below the $100,000 recommended fine. As we stated in United States v. Fentress, 792 F.2d 461 (4th Cir. 1986), "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make." Id. at 464. The Government made no promise not to rebut what the Company argued. The Government's response regarding the history of West Virginia mining fatalities was permissible as it supported the case for the $100,000 fine