56 F.3d 63
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Andre WILLIAMS, a/k/a Drey, a/k/a Andre Curry, Defendant-Appellant.
 No. 94-5521.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 1, 1995.
Decided May 31, 1995.
 
 ARGUED: Timothy Francis Cogan, Cassidy, Myers, Cogan & Voegelin, L.C., Wheeling, WV, for appellant. Thomas Oliver Mucklow, Assistant United States Attorney, Wheeling, WV, for appellee. ON BRIEF: William D. Wilmoth, United States Attorney, Wheeling, WV, for appellee.
 Before HALL and WILKINS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Andre Williams appeals the sentence imposed for his convictions for various drug-related offenses. We vacate the sentence and remand for resentencing.
 
 
 2
 * Williams was arrested on June 29, 1993, and was named with five other defendants in a 100-count indictment handed down in September, 1993. He signed a plea agreement on October 6, 1993, under which he agreed to plead guilty to three counts: (1) Count 1, conspiracy to distribute crack cocaine (21 U.S.C. # 8E8E # 841(a)(1) and 846); (2) Count 19, possession of a firearm in relation to a drug trafficking crime (18 U.S.C. Sec. 924(c)(1)); and (3) Count 67, money laundering (18 U.S.C. Sec. 1956(a)(1)(B)(i)). He also agreed to cooperate with the government's investigation, and the agreement provided that, in accordance with U.S.S.G. Sec. 1B1.8, any information obtained by the government as a result of Williams' cooperation would be made known to the court but could not be used by the court in determining the applicable Guideline sentencing range. The government and Williams stipulated that his relevant conduct included 1.6 kilograms of crack and 514 grams of powder cocaine.
 
 
 3
 In an unsigned, undated "affidavit" covering some eleven single-spaced pages, Williams recounted his involvement in the drug trade. The affidavit was prepared by DEA Special Agent Kenneth Winkie, and it somehow found its way into the hands of the probation officer who was preparing the presentence report (PSR).
 
 
 4
 Using the agreed upon drug weights, the probation officer arrived at a total offense level of 39 for Count 1 by the following route: To a base offense level of 38 (Sec. 2D1.1(a)(3)) was added four levels for Williams' role as an organizer or leader of an extensive distribution ring (Sec. 3B1.1(a)),[1] and three levels were deducted for acceptance of responsibility (Sec. 3E1.1(a),(b)). A criminal history category of III produced a range of 324-405 months.
 
 
 5
 The PSR author noted that the defendant had "provided the investigating agents a complete summary of his drug related activities. That document, marked 'AFFIDAVIT' is attached and self explanatory." Under the section of the report titled "Probation Officer's Independent Determination of the Facts," the PSR author stated that Agent Winkie
 
 
 6
 indicated that the information set forth in the government's version section of this report[2] and the statements contained in Mr. Williams affidavit provides a complete and fair assessment of Mr. Williams' overall drug trafficking activities and related conduct. Agent Winkie further indicated that Mr. Williams was the organizer and leader of an extensive "crack" cocaine distribution network operating in North Central West Virginia and elsewhere. (emphasis added) In response to Williams' objection to the recommendation that four levels be added under Sec. 3B1.1(a), the probation officer merely repeated the above-quoted statement from the PSR.
 
 
 7
 The court agreed that Sec. 3B1.1(a) applied; as the court put it, "[w]ithout Mr. Williams, this organization would not have functioned or at least flourished."[3] The government's Sec. 5K1.1 "substantial assistance" motion was granted, and the court departed downward five offense levels (from the recommended level of 39) to a total offense level of 34. From the resulting sentencing range of 188-235 months, the court imposed a sentence of 188 months on Count 1.[4] Williams appeals.
 
 II
 
 8
 Williams now claims that part of the evidentiary basis for the organizer/leader adjustment was information that he provided to the authorities after he had entered into the plea agreement. In addition to constituting a violation of the Guidelines, such breaches of plea agreements "serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." United States v. Fant, 974 F.2d 559, 564-65 (4th Cir.1992) (citations omitted); see also United States v. Abanatha, 999 F.2d 1246, 1249 (8th Cir.1993), cert. denied, 114 S.Ct. 1549 (1994). Because Williams failed to raise this issue before the sentencing court, however, we must affirm the sentence unless we find plain error. Fant, 974 F.2d at 564-65. We have held that use of post-agreement "cooperation information" is a breach of the plea agreement that can qualify as plain error. Id. This case is a close one, but we believe that remand is necessary for the clarification of some issues by the district court.
 
 
 9
 * The crux of the problem lies in the probation officer's access to, and apparent reliance on, Williams' affidavit.[5] It may well turn out that the government had sufficient information before the plea to support a finding that Williams was a leader of the organization. Nevertheless, when cooperation information is made available to the author of the presentence report, which report is in turn presumptively used by the court to support an increase in the offense level, we may assume the plea agreement has been breached.
 
 
 10
 To be plain error, the cooperation information must have actually been used by the sentencing court to support the organizer adjustment. See Fant, 974 F.2d at 565. Moreover, the use of the information must have affected the sentence; in some cases, it may be possible to conclude on appeal that the immunized information had no effect on the Guidelines calculation. In United States v. Phillips, 37 F.3d 1210, 1215 (7th Cir.1994), for example, the defendant failed to complain to the sentencing court about the government's alleged use of cooperation information concerning the quantity of drugs for which he was being held accountable (7,415 grams). On appeal, the court found no plain error because the defendant was unable to demonstrate that the district court would have found a quantity below the threshold five-kilogram level used to set the base offense level had this cooperation information not been used. We are unable to perform a similarly precise filtering process on the record before us, and we conclude that remand is the prudent course.
 
 
 11
 Whether a defendant acted in a given supervisory role involves an inquiry into a clandestine group, the dynamics of which may not become clear until someone from within the group begins to cooperate.[6] It is simply impossible to purge the record of immunized information so as to make our own finding of the adequacy of the government's pre-agreement evidence. See United States v. Fontana, 1995 WL 123769 (1st Cir.) (remanding for clarification of district court's interpretation of plea agreement because of appellate court's inability to determine from the record how certain cooperation information was used). On resentencing, the government could, of course, again recommend an increase under Sec. 3B1.1(a), but it must do so without using the affidavit or any other information obtained from Williams' efforts at cooperation.
 
 
 12
 This case is an unusual one. It will not be often that (1) a PSR makes express reference to, and implicit use of, a document containing immunized cooperation information, and (2) the record is unclear with regard to whether this information was necessarily used to increase the sentence. On remand, the burden is on the defendant to prove a violation of the plea agreement by the government. See United States v. Conner, 930 F.2d 1073, 1076 (4th Cir.1991) ("[T]he party alleging a breach [ ] ha[s] the burden of proving, by a preponderance of the evidence, that the government breached the agreement"), cert. denied, 502 U.S. 958 (1991). If the police or prosecutor has provided to the court information attributable to Williams' cooperation without disclosing that such information cannot be used in the guideline calculation, the agreement has been breached. If such a breach of the plea agreement is found, then the district court may grant such relief it deems appropriate under the circumstances. See United States v. Jureidini, 846 F.2d 964, 966 (4th Cir.1988) (listing specific performance and rescission of the plea agreement as examples of relief in cases involving breaches of a plea agreement).
 
 B
 
 13
 The government argues that Williams waived the protection of Sec. 1B1.8 when he argued at the sentencing hearing that the information in the affidavit (as well as Williams' February 9, 1994, grand jury testimony) did not provide a basis for the organizer/leader adjustment. The error occasioned by the probation officer's and the court's apparent reliance on the affidavit was not erased by defense counsel's attempt to have the court construe the improperly submitted information in his favor. The Guidelines provide that, "[w]here a defendant agrees to cooperate ..., and as part of a cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range...." U.S.S.G. Sec. 1B1.8(a). As the Sentencing Commission notes, "[t]he guideline operates as a limitation on the use of such incriminating information in determining the applicable guideline range, and not merely as a restriction of the government's presentation of such information ..." Id. at comment(n.5). In other words, the court is bound to disregard cooperation information to increase a sentence when the plea agreement so provides, and this directive must be scrupulously observed.
 
 VACATED AND REMANDED FOR RESENTENCING
 WILKINS, Circuit Judge, dissenting:
 
 14
 The majority concludes that Williams' sentence must be vacated because the district court may have relied in part on information he disclosed pursuant to a plea agreement. The plea agreement prohibited the court from relying on such information when it enhanced Williams' offense level pursuant to United States Sentencing Commission, Guidelines Manual, Sec. 3B1.1(a) (Nov.1993) for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The majority's decision to vacate Williams' sentence and remand for resentencing is wrong for two reasons.
 
 
 15
 First, although the majority is correct that Williams failed to raise this issue before the district court, it is incorrect that a plain error standard of review should be applied. The transcript of the sentencing colloquy before the district court unmistakably demonstrates that Williams himself relied on information contained in the affidavit he provided pursuant to the plea agreement in support of his position that the enhancement should not be applied and, further, reveals that he specifically urged the district court to consider the information in his affidavit in reaching its decision. Therefore, any error in the consideration by the district court of information disclosed by Williams pursuant to the plea agreement was invited and does not provide a basis for resentencing. See United States v. Herrera, 23 F.3d 74, 75 (4th Cir.1994) (" '[A] defendant in a criminal case cannot complain of error which he himself has invited.' ") (quoting Shields v. United States, 273 U.S. 583, 586 (1927)).
 
 
 16
 Second, even if Williams had not invited the error by requesting that the district court consider the affidavit, he still would not be entitled to resentencing. If plain error were the appropriate standard of review, the majority would be correct in concluding that to the extent the district court did so, its consideration of information Williams disclosed pursuant to the plea agreement was an error that affected " 'the fairness, integrity or public reputation of judicial proceedings.' " United States v. Olano, 113 S.Ct. 1770, 1779 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)); United States v. Fant, 974 F.2d 559, 564-65 (4th Cir.1992); see also U.S.S.G. Sec. 1B1.8(a) (Nov.1993). However, the Supreme Court made clear in Olano that normally a "defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." Olano, 113 S.Ct. at 1778. Unlike the situation presented to this court in Fant, it is not clear that the district court lacked sufficient information aside from that supplied by Williams to find that he was an organizer or leader. Importantly, Williams has not shown that any information upon which the district court relied was not gathered by law enforcement officers from independent sources. Williams therefore has failed to satisfy his burden of showing that his substantial rights were affected.* Consequently, Williams' allegation that the district court improperly considered information he disclosed pursuant to his plea agreement does not constitute plain error warranting resentencing.
 
 
 
 1 U.S.S.G. Sec. 3B1.1 (Nov.1993) provides for increases in the offense level based on the degree of the defendant's supervisory role in the offense and the extent of the criminal activity. "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive ...," four levels are added. For a similarly extensive criminal activity--"five or more participants or [ ] otherwise extensive"--where it is found that "the defendant was a manager or supervisor (but not an organizer or leader) ...," subsection (b) provides for a three-level increase. Finally, a defendant who acts in any of these supervisory roles, but in a less extensive activity, receives a two-level increase. Whether any of these adjustments applies is essentially a factual question, and the government has the burden of proving applicability by a preponderance of the evidence. United States v. Goff, 907 F.2d 1441 (4th Cir.1990). On appeal, we ordinarily review the court's determination for clear error. United States v. White, 875 F.2d 427, 433-34 (4th Cir.1989).
 
 
 [2]
 During oral argument of this appeal, the Assistant United States Attorney stated that he did not have access to Williams' affidavit while he was preparing the "prosecution's version of the offense," which was dated January 31, 1994
 
 
 [3]
 With regard to the magnitude of the operation, the court named seven participants (including Williams), plus two other possible participants. The court also found that the operation was "otherwise extensive."
 
 
 [4]
 The court imposed a concurrent 188-month sentence on Count 67, money laundering, and a mandatory five-year consecutive sentence on Count 19. See 18 U.S.C. Sec. 924(c)(1)
 
 
 [5]
 At oral argument, the government disavowed any knowledge of how the affidavit found its way into the probation officer's hands. However, inasmuch as Agent Winkie both prepared the affidavit and briefed the PSR author, the agent would appear to be the most likely source
 
 
 [6]
 It may be that Williams' decision to plead and cooperate convinced some of his associates to come forward and do the same, thus providing
 the police with various pieces to the organizational puzzle. The probation officer noted in his PSR that "Agent Winkie believes that Mr. Williams' cooperation prompted the codefendants to accept pleas rather than expose themselves to additional relevant conduct which Mr. Williams had knowledge of." We need not reach the question of whether the use of information obtained from codefendants under such circumstances may be used in determining Williams' sentence. See United States v. St. Julian, 922 F.2d 563, 566-67 (10th Cir.1990) (holding that use of codefendants' testimony violates neither the plea agreement nor due process).
 
 
 *
 This error would not be within the category of especially egregious errors that the Supreme Court has indicated might warrant correction "regardless of their effect on the outcome." Olano, 113 S.Ct. at 1778