**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 97-4386

RICHARD ANTHONY WESTERN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                                              No. 97-4387
NETTASHA SULEAST WESTERN, a/k/a
Nettasha Suleast Chapman,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., District Judge.
(CR-96-253)

Argued: April 6, 1998

Decided: May 29, 1998

Before WILKINS and LUTTIG, Circuit Judges, and G. ROSS
ANDERSON, JR., United States District Judge for the District of
South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant Nettasha Western; James Wilson Swindell, High Point, North Carolina, for Appellant Richard Western. Timika Shafeek, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Nettasha Suleast Western ("Nettasha") and Richard Anthony Western ("Richard")[1] appeal their sentences for violation of possession with intent to distribute "crack" cocaine, see 21 U.S.C. § 841(a)(1) and (b)(1)(A), and violation of 18 U.S.C. § 2. Nettasha appeals the district court's finding that she did not enter a cooperation agreement with the government on the night of her arrest, pursuant to United States Sentencing Guidelines Manual § 1B1.8. She also appeals the district court's denial of her request to remain on bond pending execution of her sentence. Richard appeals his sentence, arguing the drug amounts attributed to him at sentencing were not established by a preponderance of the evidence. We affirm the judgment of the district court.

I.

On December 5, 1996, police officers of the High Point Police Department executed a search warrant at defendants' home. The offi-

_____

[1] Nettasha and Richard are collectively referred to as "defendants."

2

cers arrested defendants and transported them to the nearby police department, seizing 257.4 grams of cocaine base in the process. While at the police department, Nettasha was brought to Officer Sampson's desk, at his request, to discuss the possibility of cooperation.**2** During their meeting, where Nettasha was advised of her Miranda rights, Sampson questioned Nettasha about her drug activities, and offered her the opportunity to "help herself." Officer Sampson expressed his opinion that she needed to decide on cooperating"right away."

Nettasha signed a waiver of rights form, which stated any information she provided to the authorities could be used against her. She revealed in a written statement that she would obtain between five and ten ounces of crack once or twice a week from her drug supplier. Sampson informed Nettasha that he was making no promises, but that he would discuss her case with the district attorney. Nettasha admitted as much, stating she understood that it was "up to the judge." Thereafter, Nettasha further indicated that she and Richard had sold crack for approximately three years, receiving about one-half of a kilogram of crack from their source one to two times per week. Richard confirmed that their drug dealing activities took place over a three year period.

On December 16, 1996, the grand jury returned an indictment against the defendants. The indictment charged them with possession with intent to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and violation of 18 U.S.C. § 2. On January 16, 1997, Nettasha submitted a proffer letter to the government pursuant to United States Sentencing Guidelines Manual§ 1B1.8. The proffer reiterated Nettasha's involvement in the crime, and provided information as to other individuals involved in the drug trade. A plea agreement was consummated on February 4, 1997. During this period, Nettasha assisted police by identifying other individuals, automobiles, and places associated with illicit drug activity, and was debriefed by an agent of the DEA. Richard submitted a similar proffer on January 31, 1997, and entered into a plea agreement with the government on February 4, 1997. On the same date the plea agreements were entered, both defendants pled guilty.

_____

**2** Richard was also summoned to Officer Sampson's desk, but the interview was terminated based on Sampson's belief cooperation was not forthcoming.

Thereafter, on May 8, 1997, the district court sentenced Nettasha to a term of imprisonment of 135 months, and sentenced Richard to a term of imprisonment of 240 months. Both defendants were given a five year term of supervised release and charged a $100 special assessment.

After the district court pronounced its sentence, Nettasha requested she be permitted to remain on bond, pursuant to 18 U.S.C. § 3145(c), pending execution of her sentence. In a separate hearing held June 4, 1997, the district court denied her request. Defendants filed timely appeals.

II.

Nettasha first claims that the trial judge erred by finding no cooperation agreement was formed between her and the government on the night of her arrest. She argues that § 1B1.8 should govern her statements to Officer Sampson because "her cooperation led ultimately to the formation of a written plea agreement, [and that] such writing became the final expression of the parties' agreement." She requests that her sentence be vacated, and that the matter be remanded to the district court with instructions she be resentenced only on the amount of cocaine seized the night of her arrest. We conclude that the district court properly found that no § 1B1.8 agreement existed when the incriminating statements were made.

We are required to give "due deference" to a district court's application of the guidelines to the facts. 18 U.S.C.§ 3742(e). Our circuit has stated that "[t]he amount of deference due a sentencing judge's application of the guidelines to the facts . . . depends on the circumstance of the case." See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). Where the issue turns primarily on a question of law, we apply a standard closer to de novo review. Id. Where, as here, the appeal requires the legal interpretation of a guideline section, we apply de novo review.

Section 1B1.8 of the sentencing guidelines provides

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of

4

others, and as part of the cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

See U.S. Sentencing Guidelines Manual § 1B1.8.

We are mindful that an agreement made under § 1B1.8 cannot be read to subject a defendant to an increased sentence by virtue of her cooperation, where the government has agreed not to use such information for that purpose. See United States v. Malvito, 946 F.2d 1066, 1068 (4th Cir. 1991). The district court is required to honor the government's § 1B1.8 promise not to use evidence learned by virtue of the cooperation to subject a defendant to a harsher sentence. Id.

Application of § 1B1.8 requires that two separate steps be satisfied to form a binding agreement. First, a defendant must agree to cooperate by providing information on the unlawful activities of others to the government. Second, the government must agree that self-incriminating evidence will not be used against the defendant. Nettasha urges us to find an agreement was made the instant she began cooperating with the government. However, we decline to do so, finding the second requirement enunciated above has not been satisfied.

We find the analysis of United States v. Rutledge, 900 F.2d 1127 (7th Cir.), cert. denied, 498 U.S. 875 (1990), instructive. The Rutledge Court held that a proper Miranda warning, followed by a police officer's statement that a defendant's cooperation would be helpful, does not amount to an agreement by the government not to use self-incriminating evidence against the defendant. Id. at 1131. Such a promise, the court concluded, would be inconsistent with the Miranda warning just given. Id. In addition, the court noted the officer did not rescind the Miranda warning. Id .

We find Nettasha's reliance on United States v. Fant, 974 F.2d 559, 563 (4th Cir. 1992), misplaced. We held in Fant that solicitation of incriminating statements by agents of the FBI, posing as probation officers, could not be used against a defendant subsequent to execu-

5

tion of a plea agreement. Id. at 563-64. The underlying rationale for that decision was that permitting the government to side-step its plea obligations would impede the candor of informants and undermine the integrity of our criminal system. Id. at 564. We find that the reasons supporting the decision in Fant are not present here, as no plea agreement existed when the incriminating statements were made.

Here, it is undisputed that officers informed Nettasha of her Miranda rights prior to her provision of self-incriminating evidence to Officer Sampson. She signed a waiver of rights form. In addition, Officer Sampson told Nettasha that he made no promises regarding the information she provided. We find that no agreement was entered by the government during the meeting concerning the use of incriminating evidence against Nettasha. Indeed, no such agreement existed, especially considering the proximity of the Miranda warnings to her statements and the fact that Sampson did not rescind that warning. Inducements of self-incriminating statements by the police do not create § 1B1.8 cooperation agreements, absent a promise to the contrary. We believe that where, as here, a defendant is given a proper Miranda warning, and that warning is not rescinded, the defendant runs the risk of providing self incriminating evidence at her own peril.

In any event, the plea agreement entered on February 4, 1997, contains a clause similar to a contract integration clause. Section 8 of the plea agreement states that "[n]o agreements, representations, or understanding have been made between the parties in this case other than those which are explicitly set forth in this Plea Agreement, and none will be entered into unless executed in writing and signed by all the parties." The Plea Agreement does not reference an understanding between the parties that Nettasha's incriminating statements made prior to February 4, 1997 would not be used against her. To be sure, the plea agreement fails to include a clause which incorporates the statements made the night of her arrest. Accordingly, we affirm the district court's decision that no § 1B1.8 agreement was entered on the night Nettasha was arrested.

III.

Next, Nettasha argues the district court misunderstood the release provisions of 18 U.S.C. § 3145(c) when it ordered she be detained

6

pending execution of her sentence. When Nettasha raised her motion for release, she was subject to the detention provisions of 18 U.S.C. § 3143(a)(2), as she was awaiting execution of her sentence. Since that time, however, Nettasha has begun serving her sentence. When questioned at oral argument regarding the relief Nettasha currently seeks, counsel conceded that the issue of her release is now moot. Accordingly, we find the issue is moot.

IV.

Richard argues that his sentence is invalid, contending he should only be held accountable for the 257.4 grams of cocaine base seized at the time of his arrest. His base offense level was calculated at 38, based on 3.402 kilograms of cocaine base attributed to him at sentencing. He asserts the government should have offered additional evidence, other than Nettasha's January 16, 1997 proffer, as to his drug amounts.

The Government bears the burden of establishing the quantity of drugs for which a defendant should be held accountable for purposes of sentencing by a preponderance of the evidence. See United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990); United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989), cert. denied , 493 U.S. 1084 (1990). The Government satisfies its burden where a defendant fails to properly object to the finding recommended in a presentence report which the court determines is reliable. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). Mere objections to findings in a presentence report, however, are not sufficient. Id. An affirmative duty is placed on a defendant to show information contained in a presentence report is unreliable, and a defendant is required to articulate reasons why the information contained in the presentence report is untrue or inaccurate. Id. In the absence of such an affirmative showing, the sentencing court may adopt the findings in the presentence report without further inquiry or explanation. Id. (citation omitted).

Here, Richard never filed specific, written objections to the accuracy of the Presentence Report. At sentencing, however, he argued that he should only be held accountable for the drugs seized at the time he was arrested. Richard failed to establish the information contained in the Presentence Report was either inaccurate or unreliable.

7

The district court adopted the findings in the Presentence Report, which were based on defendant's own statements as to drug amounts. Nettasha indicated she and Richard had been receiving approximately one-half of a kilogram of crack one to two times per week over a three year period. Richard confirmed that their illicit drug activities occurred over a three year period. The drug amounts attributed to Richard were properly controlled by the Presentence Report. Therefore, the judgment of the district court is affirmed.

V.

Accordingly, we affirm defendants' sentences for possession with intent to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. We reject Nettasha's arguments that a § 1B1.8 agreement was formed the night of her arrest, and find her appeal on the detention issue moot. We also find Richard's argument unpersuasive. Therefore, the judgment of the district court is

AFFIRMED.