# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNPUBLISHED

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

BRUCE ELLIOTT LITTLE,
　　　　　*Defendant-Appellant.*

No. 99-4661

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-97-142-MU)

Argued: April 4, 2001

Decided: July 20, 2001

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion. Judge
Williams wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Douglas Marshall Jarrell, ROBINSON, BRADSHAW &
HINSON, P.A., Charlotte, North Carolina, for Appellant. Kenneth
Davis Bell, OFFICE OF THE UNITED STATES ATTORNEY,
Charlotte, North Carolina, for Appellee. **ON BRIEF:** Mark T. Cal-
loway, United States Attorney, Brian Lee Whisler, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Ten years ago we held that when a defendant in his plea agreement explicitly waives the right to appeal his sentence, there is an implicit waiver by the government of its right to appeal. *See United States v. Guevara*, 941 F.2d 1299, 1299-1300 (4th Cir. 1991). This principle has prompted a related question today. When the government disregards *Guevara* and takes an unauthorized (but successful) appeal from a sentence, does the defendant's lawyer render ineffective assistance when he fails to seek a dismissal of the appeal? We hold that the lawyer's inaction renders his representation ineffective, thereby violating the defendant's Sixth Amendment right to counsel.

I.

In June 1997 Bruce Little was indicted on two counts for bank robbery and bank larceny in violation of 18 U.S.C. § 2113(a) and (b). Thereafter, Little and the government entered into a plea agreement under which Little pled guilty to bank robbery and waived his "right to contest . . . [his] sentence in any direct appeal or other post-conviction action." Before sentencing, Little filed an objection to his presentence report classification as a career offender under § 4B1.1 of the sentencing guidelines. Little argued that the probation officer had improperly used his North Carolina conviction for assault on a female as a predicate to classify him as a career offender because that crime was not a crime of violence. The district court agreed with Little on the grounds that (1) none of the underlying facts about the crime were available and (2) the "court's experience [with] the [state] courts in North Carolina" revealed that a defendant could easily be convicted of assault on a female without committing a battery. Without the career offender enhancement Little's sentencing range was 70-87 months, and the court imposed a prison term of 87 months. If the enhancement had been employed, Little's sentencing range would have been considerably higher, 151-188 months.

The government appealed Little's sentence, arguing that the district court erred when it refused to treat Little's assault-on-a-female conviction as a crime of violence that, added to another prior crime, made him a career offender. In his response to the government's appeal brief, Little's lawyer argued only the merits of the career offender issue. The lawyer completely omitted (or missed) his best argument, that the government had implicitly waived its right to appeal. This court held that Little's conviction for assault on a female was a crime of violence under the guidelines. *See United States v. Little*, No. 98-4391, 1999 WL 156153, at \*5 (4th Cir. Mar. 23, 1999) (recognizing that "Courts in this Circuit are . . . bound to consider only the elements of the convicted offense in deciding whether the defendant committed a crime of violence, and not the defendant's conduct."). We vacated Little's sentence and remanded for resentencing. On remand the district court used Little's assault-on-a-female conviction as a predicate to classify him as a career offender. The court then resentenced Little to 151 months in prison, a sentence that was more than five years longer than the original one. Little appeals his new sentence.

## II.

Little argues that his lawyer in the first appeal provided ineffective assistance by failing to point out that the government was barred from appealing his sentence. His lawyer's failure to make this argument, Little says, caused him to be resentenced to a prison term that was 64 months longer than his original term.

A defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel on direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 346 (1985); *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000). To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his "counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The first *Strickland* requirement is commonly called the "performance" prong and the second the "prejudice" prong.

Ordinarily, an ineffective assistance claim should be raised by motion under 28 U.S.C. § 2255 in district court. We will, however, consider such a claim on direct appeal when it "'conclusively appears' from the record that defense counsel did not provide effective representation." *United States v. Gastiaburo*, 16 F.3d 582, 590 (4th Cir. 1994). The record here is sufficiently developed, and Little's ineffective assistance claim meets the test for consideration on direct appeal.

Under the plea agreement Little waived his right to appeal the sentence imposed by the district court. When a defendant explicitly waives his right to appeal in a plea agreement, the government, in turn, implicitly waives its right to appeal. *See United States v. Guevara*, 941 F.2d 1299, 1299-1300 (4th Cir. 1991) (holding that a plea agreement "provision against appeals [by the defendant] must also be enforced against the government, which must be held to have implicitly cast its lot with the district court, as the defendant explicitly did.").

Little argues that his lawyer in the previous appeal was ineffective because he failed to seek a dismissal of the appeal on the ground that the government had, according to *Guevara*, implicitly waived its right to appeal his sentence. The government does not challenge Little's contention that his lawyer's omission amounted to deficient performance under *Strickland*'s first prong. However, the government, relying on *Lockhart v. Fretwell*, 506 U.S. 364 (1993), argues that Little cannot satisfy *Strickland*'s prejudice prong. In *Lockhart* the petitioner, Fretwell, had been convicted of felony murder (specifically, murder during a robbery) and sentenced to death. During the sentencing proceeding Fretwell's lawyer should have objected to the use of pecuniary gain as an aggravating factor on the basis of the Eighth Circuit's decision in *Collins v. Lockhart*, 754 F.2d 258 (8th Cir. 1985) (holding that a death sentence is unconstitutional if it is based on an aggravating factor that duplicates an element of the underlying felony). However, by the time Fretwell asserted his ineffective assistance claim, the Eighth Circuit had overruled its decision in *Collins*. Thus, the objection that Fretwell's lawyer should have made no longer had legal merit. As a result, the Supreme Court held that Fretwell could not satisfy *Strickland*'s prejudice requirement. To allow him to prevail, the

Court said, "would grant [Fretwell] a windfall to which the law does not entitle him." *Lockhart*, 506 U.S. at 370.

The government argues that we would be granting Little a comparable windfall if he prevailed in this appeal. He would achieve the shorter sentence, even though the district court misapplied the sentencing guidelines. We disagree that this result would amount to a windfall within the meaning of *Lockhart*. In *Williams v. Taylor*, 529 U.S. 362, 392 (2000), the Supreme Court clarified the scope of *Lockhart*. The Court held in *Williams* that, notwithstanding *Lockhart*, when a lawyer's performance deprives the defendant of "a substantive or procedural right to which the law entitles him," *Strickland*'s prejudice component is satisfied. *Williams*, 529 U.S. at 392. In other words, the defendant loses more than the opportunity for a windfall when he is deprived of a substantive or procedural right. In the prior appeal in this case, the slack performance by Little's lawyer deprived Little of a substantive right. Little's lawyer should have argued that the government breached the plea agreement by appealing the sentence. "If the government breaches express or implied terms of a plea agreement, a violation of due process occurs." *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994). Little was deprived of due process because the government prosecuted an appeal that it had no right to file. Because Little's lawyer did nothing to prevent this due process violation, Little has satisfied *Strickland*'s prejudice requirement. Little's Sixth Amendment right to counsel was therefore violated, and he is entitled to relief.

## III.

The dissent would affirm Little's sentence and force him to assert his ineffective assistance claim in a collateral proceeding. The dissent's theory is based on an argument that the government waived and that does not, in any event, prevent us from granting immediate relief to Little.

At oral argument the government's lawyer acknowledged, "If the court doesn't buy my [lack of prejudice] argument[ ], then I don't have one." Nonetheless, the dissent believes that the government has overlooked an argument that could explain why Little's lawyer did not provide ineffective representation when he failed to seek a dis-

missal of the government's appeal on the ground that it had implicitly waived its right to appeal. According to the dissent, the plea agreement prohibited Little from challenging at sentencing the probation officer's recommendation that he qualified as a career offender. The dissent reasons that because Little objected at sentencing to the probation officer's recommendation, it appears that Little breached the plea agreement. If Little breached the plea agreement, the government could appeal, despite its implicit waiver of appeal in the plea agreement. *See United States v. Bowe*, No. 00-4269, ___ F.3d ___, slip op. at 10 (4th Cir. July 13, 2001) (holding that the government may appeal when the defendant breaches the plea agreement). A breach by Little, according to the dissent, would mean that his lawyer did not provide deficient representation because it would have been futile to raise the implicit waiver of appeal argument. We disagree with the dissent's approach because, as we will explain, it rests upon a strained reading of the plea agreement.

The dissent contends that § 4(c) of the plea agreement appears to have barred Little from objecting to the career offender enhancement at sentencing. Section 4(c) states:

> Notwithstanding any recommendations in this Agreement as to the offense level, if the Probation Office determines from the defendant's criminal history that U.S.S.G. § 4B1.1 (Career Offender) or § 4B1.4 (Armed Career Criminal) . . . applies, then that provision will be used in determining the sentence.

According to the dissent, the phrase "will be used" means that the defendant agrees not to challenge the probation officer's recommendation. However, when § 4(c) is read in context, it becomes obvious that it serves a different purpose. Section 4 of the plea agreement explains in detail how the defendant's sentence will be calculated under the guidelines. For example, § 4(b) explains that the "Probation Office will compute the defendant's Criminal History Category." Section 4(c) deals with a discrete issue in the calculation of the defendant's sentence. In a plea agreement the parties may agree to recommend a particular offense level. *See, e.g.*, *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999); *United States v. Thorne*, 153 F.3d 131, 132 (4th Cir. 1998). Section 4(c) is boilerplate

language clarifying that if the career offender or armed career criminal provision applies, that provision will supply the offense level in lieu of the level recommended by the parties. Therefore, if the career offender provision applies, it "will be used" in calculating the defendant's sentence, "[n]othwithstanding any recommendations in [the plea] Agreement as to the offense level." This is quite different from saying that the defendant cannot object at sentencing to the application of the career offender section. In short, § 4(c) only serves to clarify that the offense level recommended by the parties will not trump the offense level supplied by the career offender section.

Another part of the plea agreement also undercuts the dissent's interpretation. Part IV of the agreement, titled "Waivers," lists (in six separate paragraphs) the various rights that the defendant waives by reason of the agreement. Part IV contains no waiver of the defendant's right to object at sentencing to the application of the career offender provision. If the defendant had waived the right to object to career offender status, it would be reasonable to expect that such a waiver would be included in part IV.

Even if the dissent's reading of § 4(c) is given every edge, it at most creates an ambiguity about whether the defendant could object to the career offender designation. In that case, the dissent's interpretation would still have to be rejected because any ambiguity in the plea agreement must be construed against the government. *See United States v. Harvey*, 791 F.2d 294, 300-01 (4th Cir. 1986). Therefore, § 4(c) did not prohibit Little from objecting to the career criminal enhancement at sentencing. Accordingly, he did not breach the plea agreement, and his lawyer failed to raise a clear, winning argument on appeal.

The discussion about what § 4(c) means is academic, however, because the government has waived any argument that Little breached the plea agreement. In *United States v. Fant*, 974 F.2d 559, 562 (4th Cir. 1992), we held that if a party does not object to a breach of the plea agreement, it must show that the breach constituted plain error. If the government's interpretation of the plea agreement mirrored the dissent's interpretation, the government should have objected when Little challenged his career offender status at sentencing. Specifically, the government should have asked the court to ignore Little's objec

tion. While the government argued the merits of the career offender issue at sentencing, it never claimed that Little could not object. As a result, the government must show that any breach by Little constituted plain error. Because it is far from "obvious" that Little breached the plea agreement, the government cannot show plain error. *Id.* at 565 ("'Plain error' is shown when the error committed is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings.") (internal quotation marks ommitted).* Little's lawyer thus had a clear field for arguing on appeal that the government had waived its right to seek appellate review of Little's sentence.

Finally, the dissent suggests that the record is not sufficiently developed to decide the ineffective assistance question on direct appeal. *See United States v. Gastiaburo*, 16 F.3d 582, 590 (4th Cir. 1994) (holding that ineffective assistance claims are only appropriate on direct appeal when it "'conclusively appears' from the record that defense counsel did not provide effective representation"). Specifically, the dissent suggests that a hearing is required so that Little's lawyer may testify as to why he did not raise the implicit waiver of appeal issue. However, Little's lawyer's subjective beliefs in this case are irrelevant. The implicit waiver of appeal defense was a clear winner. Whether the lawyer missed the issue or consciously decided not to raise it, his representation clearly "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Little's Sixth Amendment right to counsel was therefore violated during the first appeal, when the government challenged Little's original sentence.

---

*The dissent focuses on whether the district court's treatment of the career offender issue constituted plain error. However, the dissent glosses over the fact that the government must meet the plain error standard in showing that Little breached the plea agreement. *See United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997) ("When reviewing a breached plea agreement for plain error . . . we must establish whether the *breach* was 'so obvious and substantial that failure to notice and correct it affect[ed] the fairness, integrity or public reputation of the judicial proceedings.'") (emphasis added) (quoting *Fant*, 974 F.2d F.2d at 565).

## IV.

For the foregoing reasons, we vacate Little's most recent sentence and remand with the instruction that the district court reimpose the original sentence.

*VACATED AND REMANDED*

WILLIAMS, Circuit Judge, dissenting:

Little appeals the legally correct sentence, as determined by this Court, imposed pursuant to his plea agreement. Without having had the benefit of an evidentiary hearing, the majority concludes that Little's counsel acted in an unconstitutionally unreasonable manner by failing to seek a dismissal of the Government's appeal based upon the implied reciprocal appellate waiver provision in the plea agreement. This conclusion allows Little to successfully maneuver an end run around the proper application of the United States Sentencing Guidelines. Because I am convinced that the record does not support such a holding, I respectfully dissent.

## I.

## A.

"A claim of ineffective assistance of counsel should be raised by [a habeas corpus] motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it *conclusively appears* from the record that defense counsel did not provide effective representation." *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999), *cert. denied*, 528 U.S. 1096 (emphasis added) (internal quotation marks omitted and alteration in original). Here, the record is completely devoid of any testimony on the part of Little's counsel detailing whether he considered seeking a dismissal of the Government's appeal pursuant to *United States v. Guevara*, 941 F.2d 1299 (4th Cir. 1991), and if so, the reasons for his failure to assert such a defense.[1]

---

[1]The majority fails to address whether Little's counsel's performance was constitutionally deficient, stating that the Government did not chal-

Moreover, as discussed further below, counsel's performance was not patently unreasonable and could have been founded upon reasonable strategic decisions. Thus, the record is inadequately developed on the issue of whether counsel's performance fell below an objective standard of reasonableness, rendering the ineffective assistance claim proper, if at all, only on collateral review.

B.

To constitute ineffective assistance of counsel, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that counsel's unprofessional errors prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "[S]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable" in an ineffective assistance of counsel claim. *Id.* at 690; *accord Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Here, the record reflects that Little's counsel had at least two objectively reasonable bases to forgo seeking a dismissal of the Government's appeal pursuant to *Guevara*: (1) the implied reciprocal waiver argument was not clearly meritorious but, instead, likely would have failed; and (2) raising this argument could have placed the plea agreement in jeopardy while leaving the guilty plea intact.[2]

_____

lenge the point. Even assuming, however, that the Government conceded that Little's counsel's performance was constitutionally deficient, I believe that it is improper to rely upon the Government's concession to conclude that Little's counsel rendered unconstitutionally deficient legal assistance, given that the ineffective assistance claim focuses on the rationales underlying the conduct of defense counsel, to which the Government cannot speak. Instead, we should allow this ineffective assistance of counsel claim to be developed through habeas corpus review, during which an evidentiary hearing may be conducted wherein counsel may have the opportunity to provide insight into his actions and strategies.

[2]Pursuant to the plea agreement, the Government agreed to dismiss Count Two of the indictment in exchange for Little's guilty plea as to Count One. As will be discussed further below, the plea agreement also provided that, if Little breached the agreement, his guilty plea with respect to Count One would remain intact, but the remainder of the plea agreement would become null and void. Thus, a finding of breach would allow the Government to reinstate charges against Little with respect to Count Two.

1.

As to the first basis, this Court has crafted several exceptions to *Guevara* and to appellate waiver provisions generally. For example, in *United States v. Bowe*, No. 00-4269, ___ F.3d ___ (4th Cir. July 13, 2001), we held that a party's "waiver of the right to seek appellate review is not enforceable where the opposing party breaches a plea agreement." *Id.* at 15. Based upon this principle, had Little breached the plea agreement, *Guevara* would not have barred the Government from seeking appellate review. *Id.* (holding that, because the implied appellate waiver is reciprocal, release of the waiver through breach of the plea agreement also operates reciprocally).

The record provides ample cause to believe that Little breached the plea agreement during sentencing by objecting to the probation officer's recommendation that Little receive career offender treatment based upon Little's prior criminal history. Section 4(c) of the plea agreement contains the following stipulation concerning sentencing:

> Notwithstanding any recommendations in this Agreement as to the offense level, if the Probation Office determines from the defendant's criminal history that U.S.S.G. § 4B1.1 (Career Offender) or § 4B1.4 (Armed Career Criminal) . . . applies, then that provision will be used in determining the sentence.

(J.A. at 10.) The probation officer correctly determined that Little's criminal history rendered U.S.S.G. § 4B1.1's career offender provision applicable. Despite § 4(c) in the plea agreement, which allowed the probation officer conclusively to make this determination and to have it govern the guideline computation, Little objected to the applicability of § 4B1.1. *See United States v. Little*, No. 98-4391, 1999 WL 156153, at **1, 4-5 (4th Cir. Mar. 23, 1999) (unpublished) (overruling the district court's acceptance of Little's objection to the applicability of § 4B1.1 and holding that the probation office had correctly determined that § 4B1.1 applied to Little's prior convictions). The district court sustained Little's objection and concluded that § 4B1.1 was inapplicable. *See id.* at **4-5. The Government appealed, arguing that the district court had improperly construed § 4B1.1. Insofar as the plea agreement itself requires that the sentence be imposed in confor-

mity with the sentencing guidelines,[3] and § 4(c) of the plea agreement simply renders § 4B1.1 applicable upon the probation officer's determination that such treatment is warranted, our prior determination that Little's sentence was imposed in violation of the guidelines implies a high probability of success for any argument that Little's objection to career offender treatment also violated the plea agreement. *Id.* at *5 (holding that Little's sentence was not imposed in accordance with the guidelines). Thus, in light of Little's apparent breach of the plea agreement, any argument raised pursuant to *Guevara* by Little's counsel likely would not have prevailed. Because the argument was not a "dead-bang winner," *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995), but a probable loser, the failure to make it cannot conclusively demonstrate ineffective assistance of counsel.[4] *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000) (noting that counsel need not raise issues that lack merit); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (same).

2.

As to the second basis, the likelihood that Little would have been found to have breached the plea agreement provided a substantial disincentive to raising the *Guevara* argument because it placed the benefits of the agreement at risk. The plea agreement provides, "[i]n the event that the defendant fails to comply strictly with this Plea Agreement, he understands and agrees that the Plea Agreement will become null and void, except that the defendant's plea of guilty, and the

---

[3]The plea agreement provides, "any sentence imposed will be in conformity with the United States Sentencing Guidelines." (J.A. at 9.)

[4]The majority acknowledges that § 4(c) creates a binding agreement that the career offender section, once determined applicable by the probation officer, "will supply the offense level in lieu of the level recommended by the parties." Maj. op. at 7. Nevertheless, the majority concludes that Little was entitled to object to career offender treatment. Because the parties explicitly had reached this agreement with respect to the offense level to be used in calculating Little's sentence, I disagree that Little was entitled to object to the use of the agreed-upon offense level. I further disagree with the majority's intimation that, to render a binding obligation under the plea agreement operative, it must be restated in a separate "Waivers" section.

resulting guilty verdict will stand." (J.A. at 12.) The concluding para-
graph of the plea agreement reiterates the effect of a finding that Little
breached the plea agreement by stating, "[t]he defendant understands
that if he violates this agreement . . . the United States may void this
agreement, and that the defendant's plea of guilty and the resulting
guilty verdict will stand." (J.A. at 14.) Thus, raising the *Guevara*
argument necessarily may have prompted the Government to argue
that Little breached the plea agreement, which in turn may have led
to a finding to this effect, leaving Little bound by his guilty plea with
respect to Count One while subjecting him to reinstatement of Count
Two.

C.

The majority concludes that whether Little breached the plea agree-
ment is "academic" because, it asserts, the Government waived any
argument that Little breached the plea agreement, relying upon *United
States v. Fant*, 974 F.2d 559, 562 (4th Cir. 1992). Maj. op. at 7. How-
ever, in *Fant*, we clarified that the plain error analysis in the context
of failure to raise a breach of the plea agreement argument focuses on
whether the district court committed "plain error *in the sentencing
determination.*" *Id.* (emphasis added). In *Little*, we determined that
the district court's sentencing determination was erroneous, *see Little*,
1999 WL 156153, at **1, 4-5, and the error was plain. The error also
affected the Government's substantial rights under the plea agree-
ment, in that it was "so obvious and substantial that failure to notice
and correct it would affect the fairness, integrity or public reputation
of judicial proceedings." *Fant*, 974 F.2d at 564 (holding that the dis-
trict court plainly erred in allowing the Government to seek an
enhanced sentencing level contrary to that provided within the plea
agreement); *see also United States v. Perkins*, 108 F.3d 512, 517 (4th
Cir. 1997) ("[T]he district court's plain error allowed Perkins to
receive an unwarranted 52 month reduction, thereby affecting the sub-
stantial rights of the government and the people of the United States
that this defendant be sentenced correctly" and "[t]he bestowing of a
wind-fall sentence reduction . . . also seriously affects the fairness,
integrity, and public reputation of judicial proceedings." (internal
quotation marks omitted)). Thus, I disagree that the Government's
failure to argue Little's breach of the plea agreement would have
barred the Government from successfully advancing such an argu-

ment on appeal, and *Fant*, upon which the majority principally relies for this point, substantially undermines this conclusion.[5] Moreover, it is not necessary to establish definitively that the Government would have prevailed on a breach of plea agreement argument to determine that counsel did not conclusively render unconstitutionally deficient legal assistance. Rather, I undertake only to demonstrate that it is not certain that the Government was barred from appealing; thus, the argument was not, as the majority asserts, "a clear, winning argument on appeal." Maj. op. at 7.

D.

Without further evidentiary development, including the testimony of Little's counsel, it is impossible to conclude that an argument for dismissal premised upon *Guevara* would have been successful, and it is clear that such a motion had serious drawbacks. Had counsel decided against arguing for dismissal of the Government's appeal for the reasons discussed above or for other strategic reasons, I do not believe it would be appropriate to conclude that counsel's performance fell below an objective level of reasonableness. Accordingly, I disagree that the record is conclusive as to whether Little's counsel should be deemed to have rendered unconstitutionally deficient legal assistance. As we have held repeatedly, "[t]ypically the competency of counsel is best left for collateral review because . . . the record is usually inadequately developed. The record often reveals only ambiguous symptoms of a more complex set of relationships which cannot be adequately addressed on direct appeal." *United States v. Tatum*, 943 F.2d 370, 379 (4th Cir. 1991); *see also United States v. White*, 238 F.3d 537, 539 n.1 (4th Cir. 2001) (noting that this Court does not review ineffective assistance claims on direct appeal when the record

---

[5]I note also that the Government may have been entitled to raise Little's breach of the plea agreement as a gateway claim, which arguably need not be preserved to enable our review of the issue. *See United States v. Gonzales*, 16 F.3d 985, 989 (9th Cir. 1993) ("Gonzalez's failure to raise the breach [of the plea agreement] in district court would prevent him from arguing here that he is entitled to a remedy for the breach . . . . Gonzalez's inaction, however, has no bearing on whether the government did in fact breach the agreement for purposes of determining whether Gonzalez may bring this appeal at all.").

does not conclusively establish the ineffectiveness of counsel); *United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir. 1994) (holding that an ineffective assistance claim was not viable on direct appeal when premised upon an allegedly faulty performance with respect to a plea agreement because the record was not fully developed).

## II.

In conclusion, I would affirm Little's new sentence because the record does not conclusively demonstrate that Little's counsel was ineffective, and the record does conclusively demonstrate that, upon resentencing, Little received the legally correct sentence under the guidelines and the plea agreement. Thus, Little's ineffective assistance of counsel claim should be brought, if at all, in a collateral proceeding pursuant to 28 U.S.C.A. § 2255 (West 1994 & Supp. 2000).