UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                    No. 00-4287

ARTURO GAYTAN PONCE,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-99-18)

Argued: February 28, 2002

Decided: November 12, 2002

Before WILLIAMS and KING, Circuit Judges, and
Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Edward Lucius Ciccone, Corpus Christi, Texas, for
Appellant. Marshall Prince, Assistant United States Attorney, Colum-
bia, South Carolina, for Appellee. **ON BRIEF:** Scott N. Schools,
United States Attorney, Ann Agnew Cupp, Columbia, South Carolina,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Appellant Arturo G. Ponce pled guilty pursuant to a plea agreement to drug conspiracy and related firearms charges. Disappointed with his sentence, Ponce appeals, contending that the district court violated Rule 11(e) of the Federal Rules of Criminal Procedure when the court rejected the parties' stipulation as to drug quantity.* We find that the district court's rejection of the parties' stipulation as to drug quantity was consistent with the plea agreement. Accordingly, we affirm.

### I.

In our assessment of the adequacy of a guilty plea proceeding, the standard of review is de novo, "but in the Rule 11 context, violations are evaluated under a harmless error standard." *United States v. Damon*, 191 F.3d 561, 564 n.2 (4th Cir. 1999) (internal quotation marks omitted) (quoting *United States v. Goins*, 51 F.3d 400, 402 (4th

---

*The United States has moved to dismiss the appeal in reliance upon the written waiver contained in the plea agreement. "Whether a defendant has effectively waived his statutory right to appeal his sentence is a question of law subject to de novo review." *United States v. General*, 278 F.3d 389, 399 (4th Cir. 2002). "Whether such a waiver is 'knowing and intelligent' depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of accused.'" *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994)(alteration in original) (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)). We have carefully examined the record and, although the question is extremely close, we conclude that particularly in view of Ponce's limited education and his limited comprehension of the English language, the magistrate judge's questioning of Ponce as to the waiver of his right to appeal was not sufficiently probing to establish that the waiver was knowing and intelligent. Therefore, we deny the motion to dismiss the appeal.

Cir. 1995)). An appeal from a sentence entered on a guilty plea regarding an issue that is raised for the first time on appeal will be affirmed unless we find plain error. *United States v. Fant*, 974 F.2d 559, 565 (4th Cir. 1992); *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997). "'Plain error' is shown when the error committed 'is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings.'" *Fant*, 974 F.2d at 565 (quoting *United States v. Navejar*, 963 F.2d 732, 734 (5th Cir. 1992)).

## II.

## A.

In a nine-count Superseding Indictment, filed February 17, 1999, in the District of South Carolina, the grand jury charged Ponce and four co-defendants with drug and firearms offenses. Ponce was charged in six of the nine counts. J.A. at 27-32. In the course of the underlying investigation, officers had seized more than three kilograms of cocaine and a firearm on December 16, 1998. On the day trial was scheduled to commence, April 12, 1999, Ponce and the prosecution entered into a written plea agreement. *Id.* at 33. The plea agreement provided that Ponce would plead guilty to count one (charging conspiracy to possess with the intent to distribute and to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841 (a)(1)) and count four (charging possession and use of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1), (c)(2)). Among other provisions, the plea agreement provided as follows: (1) the prosecution would move to dismiss the remaining counts of the Superseding Indictment and the Original Indictment, J.A. at 33, 36-37; and (2) the district court would be free to impose any lawful sentence as determined in its sole discretion, *id.* at 38, without any limitation as to the district court's consideration of any of Ponce's offense conduct. *Id.* at 37. Moreover, the prosecution agreed to recommend that, if Ponce were prosecuted for similar crimes occurring in North Carolina before February 17, 1999 (there was an on-going parallel investigation), any North Carolina sentence should run concurrently with the sentence Ponce received in South Carolina. *Id.* at 36.

On April 28, 1999, a magistrate judge conducted a change-of-plea hearing in accordance with Fed. R. Crim. P. 11. *Id.* at 41-83. The magistrate judge went through the customary litany designed to ensure a defendant's guilty plea is knowing and voluntary. *Id.* Specifically, the magistrate judge determined that Ponce had obtained the equivalent of a second grade education in Mexico and spoke little English. *Id.* at 46. The magistrate judge determined that Ponce was competent to enter a plea, and neither counsel nor Ponce objected or voiced concern. *Id.* at 47. Ponce also told the magistrate judge that he had ample opportunity to discuss the case with his retained attorney, that an interpreter had been present to aid in his interactions with his attorney, and that Ponce believed that his attorney had done everything asked of him. *Id.* at 49-50.

Subsequently, the magistrate judge advised Ponce as to the maximum penalty for his offenses. With respect to count one, the magistrate judge stated, in part:

> The maximum penalty for this offense is graduated [up to life incarceration] by the amount of drugs which was the object of the conspiracy. *I cannot tell you at this time that amount of drugs because that may be a matter of dispute at the sentencing hearing, so I can only advise you as to the absolute maximum penalty.*

*Id.* at 57 (emphasis added). The magistrate judge also advised Ponce, and Ponce stated that he understood, that the court could not determine the applicable sentencing guideline range until the presentence report had been completed and both sides had the opportunity to challenge any disputed facts contained in the report. *Id.* at 64. The magistrate judge also assured that Ponce understood that the sentencing judge, in some circumstances, has the authority to impose a more or less severe sentence than that called for by the applicable guideline. *Id.* at 65.

Next, the Assistant United States Attorney summarized the provisions of the plea agreement. *Id.* at 67-73; *see also* J.A. at 33-40. In so doing, he stated that "the defendant[ ] understand[s] that the matter of sentencing is within the sole discretion of the court . . . ." *Id.* at 70-

71. The Assistant United States Attorney then recited the stipulation regarding drug quantity which is the focus of Ponce's appeal:

> The attorneys for the Government and the defendant, Mr. Ponce, stipulate and agree that the quantity of powder cocaine involved is 3 kilos with a base offense level of [28] for purposes of calculating the defendant's sentence pursuant to the United States sentencing commission guideline, the United States sentencing guidelines 2D1.1. *The defendant understands that these stipulations are not binding upon the court or the United States Probation Office and the defendant has no right to withdraw his plea should these stipulations not be accepted . . . .*

*Id.* at 73 (emphasis added). Ponce then stated that he understood the summary of the plea agreement, *id.* at 74, and the magistrate judge found that Ponce was entering his guilty plea voluntarily. *Id.* at 76.

Subsequently, the North Carolina investigation of Ponce concluded without the filing of additional charges. Prompted by a fear that information regarding Ponce's alleged activities in North Carolina might be used at the sentencing in this case by the Office of the United States Attorney in South Carolina, in violation of the plea agreement, Ponce filed, on August 25, 1999, a motion for specific performance of the plea agreement or withdrawal of his guilty plea. *Id.* at 84-100. On October 12, 1999, the district court conducted a hearing on Ponce's motion. *Id.* at 104.

During the hearing, the district court made it clear that, on some occasions in other cases, it had rejected stipulations as to drug amounts contained in plea agreements:

> What I have done before is, when there is a stipulation in the plea agreement, which we don't have here, you both know my practice, I'll say, "The government can stipulate to it and that means that they can't argue for more drugs. And the defendant stipulates and that means that he can't argue for less, but it doesn't bind me."

And what has happened on occasion is, on occasion is I have had probation independently review the files and information that is in the file, the South Carolina file, that could have been overlooked or just misplaced, I have on occasion charged the defendant with those drugs, because those are on the record, in the file, and everybody is on notice of them.

So, even though a stipulation — the parties may have entered a stipulation, that doesn't bind me. And those drug amounts, I will sometimes charge against the client. In this case we don't have that.

*Id*. at 113-14.

There then ensued a rather ambiguous exchange between the prosecutor and the district court. *Id*. at 115-20. The prosecutor conceded that at the time the plea agreement was negotiated, the parties anticipated that Ponce would indeed be charged in North Carolina. *Id*. at 120 ("[W]e both anticipated that something would occur in North Carolina."). Ultimately, as reflected in the following exchange, the prosecutor suggested that the parties might be permitted to withdraw from the plea agreement and either resume negotiations or go to trial, but Ponce, through counsel, firmly rejected that proposal:

Prosecutor:   I think that this is an uncontemplated circumstance . . . . And since neither [party] anticipated this circumstance, then we are prepared to start from the very beginning. And we would ask [to] . . . start[ ] from the beginning . . . .

The Court:   Mr. Harris [defense counsel], do you want to back up and start from scratch and go again?

Defense Counsel:   Before a plea agreement, is that what he's asking?

The Court:   He wants to—

Prosecutor:   We want a trial, Your Honor.

The Court:   He wants to go back to ground zero and let y'all begin your negotiations all over again.

Defense Counsel:   No, sir.

The Court:   You want specific performance of this bargain?

Defense Counsel:   Yes, sir, Your Honor.

*Id.* at 120-21.

   After Ponce declined, through counsel, the opportunity to withdraw his guilty plea, the court granted the motion for specific performance and accepted the plea agreement. *Id.* at 121. The district court stated, with regard to the question of additional drug amounts that had come to the knowledge of the prosecution from the investigation in North Carolina:

   Under this plea agreement, the defendant has lived up to his end of the bargain, he's entitled to receive the benefit of his bargain. It does not happen— and if you think about it you will see why — it does not happen that when a person in a conspiracy or otherwise pleads guilty and then lives up to the plea agreement, that that person is ever then punished or penalized for additional drug amounts that come to the knowledge of the government.

* * * *

   Because I think that assessment is made at the point the guilty plea is entered, and I have heard nothing from probation or otherwise to indicate the drug amounts were anything other, at that time, readily provable in this case, other than what the parties agreed to. And that's why I'm going to enforce it that way, and I will sentence accordingly.

*Id.* at 121-22, 124.

B.

On December 6, 1999, the probation officer provided counsel with a draft of the presentence investigation report ("PSR"). Supp. J.A. at 21. As to count one, the conspiracy count, the PSR attributed nine kilograms of powder cocaine to Ponce as relevant conduct, and recommended a base offense level of 32 (rather than the level 28 contemplated by the parties' stipulation as to drug quantity), plus a four-level enhancement for Ponce's role as an organizer or leader of the conspiracy. *Id.* at 9, 11. Thus, according to the PSR, as to count one, the recommended final offense level was 36, with a criminal history category of III, and a resulting sentencing range of 235-293 months. *Id.* at 11-13, 19. (A mandatory consecutive 60 month sentence was the guideline sentence as to count four.) Significantly, the PSR did not recommend a reduction in Ponce's offense level for acceptance of responsibility on the ground that Ponce denied any involvement with drug trafficking activity in South Carolina other than the three kilogram transaction occurring on December 16, 1998. *Id.* at 9-11. Despite objections by Ponce, the probation officer declined to modify the PSR in advance of the sentencing hearing.

It is undisputed that the greater drug amounts reported in the PSR resulted from the probation officer's independent investigation of conspiratorial acts which occurred within, and related solely to cocaine which was delivered within, South Carolina, and not from any action by the Office of the United States Attorney in South Carolina. J.A. at 134-38. Specifically, Ponce does not contend that the Office of the United States Attorney violated the plea agreement.

C.

The district court conducted Ponce's sentencing hearing on March 27, 2000. *Id.* at 130-249. At the commencement of the hearing, in response to Ponce's objection to the drug quantity set forth in the PSR, the district court noted that "the stipulation doesn't bind the court. No plea agreement stipulation binds the court on drug amounts." *Id.* at 136. The district court, echoing the written plea agreement, then remarked:

Probation is not limited in their activities by any agreement struck by the prosecutor and defense attorney. I want to

make that very clear so the Fourth Circuit understands. That is critical for them to understand.

I think sometimes some judges labor under the misconception where it is like a state court practice where the prosecutor and the defense attorney get together and whatever they agree to is just rubber stamped by the district court. Under the guidelines that is not the case. Probation does an independent review for me. Quite frankly, I had occasions before when the Government disagreed. The Government said that probation came up with — the probation office came up with lesser amounts than the Government and the defendant stipulated to. It doesn't matter to me. I go with what the facts bear out under the probation officer's investigation subject to questioning by the attorneys and objection on that point.

I want to make it very clear probation has never had their hands tied. I think there could be some argument if there was sort of a back door approach that the Government funneled and encouraged probation to add numbers to circumvent my ruling.

*Id*. at 137-38.

The district court then proceeded to take testimony from the probation officer and from a member of the conspiracy charged in the Superseding Indictment regarding the drug amounts attributed to Ponce in the PSR. The Assistant United States Attorney did not argue in favor of, or otherwise advocate for, the increased drug quantities and, indeed, did not question witnesses at the sentencing hearing. *Id*. at 229, 236. At the conclusion of the sentencing hearing, the district court adopted the findings recommended in the PSR and sentenced Ponce to 293 months incarceration as to count one, the very top of the applicable guideline range, and to 60 months consecutive as to count four, for a total sentence of 353 months, *id*. at 250-51, followed by five years of supervised release, *id*. at 252. As provided in the plea agreement, on the motion of the prosecution, the district court dismissed the Original Indictment and the remaining counts of the

Superseding Indictment. *Id*. at 119. Ponce timely noted an appeal on April 4, 2000. *Id*. at 255.

## III.

Federal Rule of Criminal Procedure 11(e)(1)(A-C) describes three categories of plea agreements, two of which, upon acceptance by the district court, are binding, and one of which is non-binding:

> (1) . . . The attorney for the government and the attorney for the defendant . . . may agree that, upon the defendant's entering a plea of guilty or nolo contendere to a charged offense, or to a lesser or related offense, the attorney for the government will:
>
> > (A) move to dismiss other charges; or
> >
> > (B) recommend or agree not to oppose the defendant's request for a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case. Any such recommendation or request is not binding on the court; or
> >
> > (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case. Such a plea agreement is binding on the court once it is accepted by the court.

FED. R. CRIM. PROC. 11(e)(1)(A-C). Pursuant to Rule 11(e)(2), the court may accept or reject a plea agreement of the type specified in subdivisions (e)(1)(A) (calling for a dismissal of remaining indictment counts) or (e)(1)(C) (calling for, *inter alia*, "a specific sentence or sentencing range") or may defer its decision pending consideration of the presentence report. FED. R. CRIM. PROC. 11(e)(2). In contrast,

subdivision (e)(2) cautions that "[i]f the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." *Id. See generally United States v. Hyde*, 520 U.S. 672, 675 (1997) ("Subdivision (e) . . . divides plea agreements into three types, based on what the Government agrees to do . . . .").

Manifestly, the plea agreement in this case is of the non-binding variety contemplated by Rule 11(e)(1)(B). For example, paragraph 12 of the agreement states that Ponce "understands that the matter of sentencing is within the sole discretion of the Court." J.A. at 38, ¶ 12. Paragraph 12 further states: "The Defendant also understands that Defendant's sentence has not yet been determined by the Court, and that any estimate . . . is only a prediction, not a promise and is not binding on . . . the Probation Office, or the Court." *Id*. Furthermore, in summarizing the agreement at the change-of-plea hearing, the Assistant United States Attorney stated that the defendant understood that "the matter of sentencing is within the sole discretion of the court." J.A. at 70. He then informed the magistrate judge of the stipulation as to drug quantity. J.A. at 71, 81. The magistrate judge then asked: "I assume that is a nonbinding recommendation?" J.A. at 72. The prosecutor responded: "Yes, sir." *Id*. After the summary of the plea agreement was recited, the magistrate judge questioned Ponce directly: "Mr. Ponce, do you agree that [the prosecutor] has accurately summarized your plea agreement . . . including the stipulation that has just been read?" Ponce replied: "Yes, sir." *Id*. at 74. As we have noted in a closely analogous context:

> The agreement with respect to [the defendant], however, was a "Type B" agreement, where the attorney for the Government agreed to make a recommendation for a particular sentence, which Rule 11(e)(1)(B) clearly provides "shall not be binding on the court." If the defendant knowingly and voluntarily enters or adheres to a guilty plea with the understanding that the judge will not be bound by the recommendation of the Government's attorney, the judge may impose a greater sentence than that recommended by the Government.

*United States v. Jackson*, 563 F.2d 1145, 1147 n.4 (4th Cir. 1977). That reasoning is fully applicable here. It is quite evident that in respect to the sentencing determinations to be made by the district court, including the determination of drug quantity, the plea agreement was a non-binding plea agreement.

Ponce's contrary argument, that his plea agreement is properly characterized as a binding plea agreement under Rule 11(e)(1)(C), places unwarranted reliance on *United States v. Veri*, 108 F.3d 1311, 1313 (10th Cir. 1997) (holding that a plea agreement specifying a sentence at a particular guideline range is specific enough to fall within the language of Rule 11(e)(1)(C)). In *Veri*, the plea agreement specifically stated that it was made pursuant to Rule 11(e)(1)(C), *id.*, a situation that does not exist in the present case.

Nor do we find persuasive Ponce's argument that the plea agreement was somehow *converted into* an agreement under Rule 11(e)(1)(C) by virtue of the proceedings on the motion for "specific performance" he filed after a concern arose as to whether the prosecution would attempt to avoid its stipulation as to drug quantity when the North Carolina investigation of Ponce ended without an indictment. Ponce argues that once the district court "accepted" the plea agreement at the hearing on the motion for specific performance, the district court was "bound" by the agreement. As support for this contention, Ponce relies heavily on the following statements by the district court during the hearing on October 12, 1999:

> The motion for specific performance is granted. The plea agreement stands and I accept it.

> * * *

> I'm going to sentence him based on the understanding that he had with the government, the plea agreement he had with the government.

> * * *

> I have heard nothing from probation or otherwise to indicate the drug amounts were anything other, at that time, readily

provable in this case, other than what the parties agreed to. *And that's why I'm going to enforce it that way, and I will sentence accordingly.*

J.A. at 121, 123, 124 (emphasis added). We reject this contention because Ponce has lifted these statements by the district court out of context. The district court made the above statements in reference to Ponce's expressed concern that the court might be induced to include drug amounts in respect to the parallel investigation in North Carolina, not in respect to the South Carolina charges which are the charges covered by the plea agreement.

Of far greater import is the fact that at this same hearing, as explained at length *supra*, the district court made clear that if the probation officer developed proof of Ponce's involvement with a greater drug quantity in South Carolina than that stipulated to in the plea agreement, then he would possibly "charge" the defendant with the greater amount, reiterating that the stipulation in the plea agreement does not bind the district court. This latter situation then arose at Ponce's sentencing hearing on March 27, 2000. Apart from his unhappiness with the district court's vigorous examination of the witness at the sentencing hearing, Ponce does not attack the district court's findings as to drug quantity and he does not contend that those findings are erroneous. Accordingly, nothing that was said and nothing that occurred at the hearing on the motion for specific performance precluded the district court from adhering to its announced practice of looking behind a stipulation as to drug quantity on the recommendation of a probation officer who undertakes an independent investigation as to that issue. In sum, as the plea agreement was a Rule 11(e)(1)(B) non-binding agreement, the district court was free to make an independent finding as to drug quantity and to impose a sentence upon Ponce in accordance with its findings.

## IV.

Finally, we note that although the drug conspiracy charge to which Ponce pled guilty did not allege a specific drug quantity, counsel for Ponce concedes that no issue is presented as to the propriety of Ponce's sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See United States v. Cotton*, ___ U.S. ___, 122 S. Ct. 1781 (2002).

## V.

For the reasons set forth herein, we conclude that we have jurisdiction over this appeal and that the district court did not violate Rule 11(e). The judgment is

*AFFIRMED*.